[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10688
Non-Argument Calendar
_____

Agency No. A216-269-506


PRAGASH VELAUTHAM,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(April 17, 2020)

Before ED CARNES, Chief Judge, MARTIN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Pragash Velautham, a native and citizen of Sri Lanka, petitions for review of

a final order of the Board of Immigration Appeals dismissing his appeal from an

Immigration Judge's denial of his applications for asylum, withholding of removal under the Immigration and Nationality Act, and withholding of removal under the United Nations Convention Against Torture.

I.

Velautham applied for admission to the United States at a port of entry in November 2017 without valid entry documents. That same month, he gave a sworn statement to an asylum officer stating that he had been threatened in Sri Lanka by an unidentified person, but he had never been physically harmed while in Sri Lanka. The Department of Homeland Security issued him a notice to appear, which charged that he was removable because he applied for admission without an entry document. At a removal hearing in March 2018, Velautham, represented by counsel, conceded removability.

Velautham applied for asylum under 8 U.S.C. § 1158(a), withholding of removal under the INA, 8 U.S.C. § 1231(b)(3), and withholding of removal under CAT, 8 C.F.R. § 208.16(c). He submitted personal documents, articles, and country reports in support of his applications. Those applications stated that he had experienced mistreatment or threats due to being ethnically Tamil and that he had aided a demonstration for the Tamil people to get their land and houses back from the Sri Lankan Army. They also claimed the Army came to his house when he was away and threatened his family. And they said another protest leader was

2

killed by the Army, the Army had mistreated Velautham, and he feared being tortured by the government if returned to Sri Lanka.

He also stated in his applications that after the Army had threatened him, when he and a friend had finished playing soccer and were walking home, two people on a motorbike came up and one of them hit him with a helmet, causing him to fall down. He and his friend tried to run away but the attackers stopped them and threatened to kill them if they participated in another demonstration. He claimed the people who threatened him had "guns in their hands."

At a merits hearing in July 2018, Velautham testified in support of his applications. He claimed that inconsistencies in his answers, such as stating in his November 2017 asylum interview that he was not attacked and then saying otherwise in his asylum application, were caused by translation and interpreter issues. He also said that he had not understood some questions in the past. He clarified that the individuals on the motorbike did not have visible weapons, but that he had assumed they had weapons because it appeared there was something under their shirts. He also clarified some other conflicting statements.

Velautham filed a written closing argument asserting, in relevant part, that even if the IJ found him not credible it would not bar relief, because by providing country background information he had established a fear of future persecution based on a pattern or practice of persecution against Tamils in Sri Lanka.

3

The IJ issued a written opinion denying his applications. First, the IJ found Velautham not credible. The IJ also found that Velautham had failed to provide reliable corroborative evidence to support his asylum claim in light of his lack of credibility. So his asylum claim failed. And because his asylum claim failed, his withholding of removal and CAT claims also failed.

Alternatively, the IJ ruled that even if he was credible and had reasonably corroborated his claim, Velautham's asylum application would be denied because he had not proven past persecution or a well-founded fear of future persecution on account of any statutorily protected ground (such as race). His withholding of removal and CAT claims would also be denied because he did not establish a sufficient risk of future persecution.

The IJ had a second alternative basis to deny his asylum application: it found that he could safely relocate within Sri Lanka. And the IJ had another basis to deny his CAT claim: Velautham had not provided credible evidence that he personally would be at a risk of torture by or with the acquiescence of the Sri Lankan government.

The Board of Immigration Appeals dismissed Velautham's appeal. It held the record supported the IJ's adverse credibility finding and agreed that he had not provided enough corroborating evidence, so the Board affirmed the IJ's ruling denying all of his claims. It also adopted the IJ's first alternative conclusion that

even if Velautham had been credible and provided reasonable corroborating evidence, his applications for asylum and withholding of removal under the INA still should be denied because he failed to prove past persecution or a well-founded fear of future persecution. And the Board denied his CAT claim because he had failed to meet his burden of proof, even if he were deemed credible, for all the reasons given by the IJ.

## II.

We review the Board's decision, unless and to the extent it expressly adopted the IJ's decision, in which case we review the IJ's decision directly. Perez-Zenteno v. U.S. Att'y Gen., 913 F.3d 1301, 1306 (11th Cir. 2019). Where the Board agrees with the IJ's decision and then adds its own observations, we will review the decisions of both the Board and the IJ. Id.

We review factual determinations under the substantial evidence test, and we "must affirm the [Board]'s decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar v. Ashcroft, 257 F.3d 1262, 1283–84 (11th Cir. 2001) (quotations and internal marks omitted). And under the substantial evidence test we view the record evidence in the light most favorable to the agency and draw all reasonable inferences in its favor. Diallo v. U.S. Att'y Gen., 596 F.3d 1329, 1332 (11th Cir. 2010). "[A]

finding of fact will [thus] be reversed only when the record compels a reversal."
Id.  We review de novo questions of law.  Id.

To qualify for asylum, Velautham must be a "refugee" under the meaning of
8 U.S.C. § 1101(a)(42)(A).  See 8 U.S.C. § 1158(b)(1)(A).  He bears the burden of
proving "refugee" status.  D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 818 (11th
Cir. 2004).  To prove refugee status, and thus be eligible for asylum, he must, with
specific and credible evidence, establish either (1) past persecution on account of a
statutorily protected ground — "race, religion, nationality, membership in a
particular social group, or political opinion" — or (2) a "well-founded fear" that he
will be persecuted on account of a statutorily protected ground.  Diallo, 596 F.3d at
1332.  "Only in a rare case does the record compel the conclusion that an applicant
for asylum has suffered past persecution or has a well-founded fear of future
persecution."  Id. (quoting Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1239 (11th Cir.
2006) (alterations omitted)).

To establish a well-founded fear of future persecution, Velautham must
demonstrate a "subjectively genuine" and "objectively reasonable" fear of
persecution on account of a protected ground.  Sama v. U.S. Att'y Gen., 887 F.3d
1225, 1232 (11th Cir. 2018).  And he must "establish a nexus between a statutorily
protected ground and the feared persecution."  Id. at 1233.  He can satisfy his
burden "by presenting specific, detailed facts showing a good reason to fear that he

6

will be <u>singled</u> <u>out</u> for persecution on account of a protected ground, or that there exists a <u>pattern</u> <u>or</u> <u>practice</u> of persecution of a group of which he is a member." <u>Id.</u> (quotation marks, alternations, and citations omitted) (emphasis added).

To qualify for withholding of removal under the INA, 8 U.S.C. § 1231(b)(3), Velautham must show that, if removed to a country, it is more likely than not that his life or freedom would be threatened in that country on account of a statutorily protected ground. <u>See id.</u> If he cannot establish a well-founded fear of persecution sufficient to support an asylum claim, he cannot meet the more stringent standard for obtaining withholding of removal relief under the INA. <u>D-Muhumed</u>, 388 F.3d at 819.

To obtain withholding of removal under CAT, an alien must establish that it is more likely than not that he will be tortured in the country of removal by public officials or by private individuals with public officials' acquiescence. <u>Jean-Pierre v. U.S. Att'y Gen.</u>, 500 F.3d 1315, 1320, 1322–23 (11th Cir. 2007). While an alien does not have to connect the risk of torture to a statutorily protected ground, he does have to establish that he will be tortured. And if an alien cannot establish a "well-founded fear of persecution sufficient to support an asylum claim, he likewise cannot establish 'torture' sufficient to warrant relief under CAT." <u>Najjar</u>, 257 F.3d at 1303; <u>see also</u> <u>Forgue</u>, 401 F.3d at 1288 n.4. That is because the "burden of proof for an applicant seeking withholding of removal under [CAT] . . .

7

is higher than the burden imposed on an asylum applicant." Najjar, 257 F.3d at 1303.

## III.

We may affirm the Board's decision on any one or more of the multiple independent grounds it provided. See Ctr. v. Sec'y, Dep't Homeland Sec., 895 F.3d 1295, 1299–1300 (11th Cir. 2018). Here, substantial evidence supported the Board's determinations that Velautham failed to show he would be singled out for persecution and that he failed to show a pattern or practice of persecution of a statutorily protected group in Sri Lanka of which he is a member. For those two reasons, the Board properly denied relief. See Sama 887 F.3d at 1233–34 (denying relief because "the record does not compel the conclusion that [petitioner] will be singled out for persecution or that there is a pattern or practice of persecution against [the protected group]").[1]

---

[1] The Board actually used the adverse credibility finding and lack of corroborating evidence as an independent basis to deny all of Velautham's asylum and withholding of removal claims solely (in addition to its alternative holdings denying some or all of his claims). But while the Board may hold that a petitioner has failed to show he will be singled out for persecution based on an adverse credibility finding and lack of corroborating evidence, see, e.g., Forgue, 401 F.3d at 1287, it is not clear if the Board can reject a pattern or practice argument without reviewing the merits. See id. Because Velautham submitted country reports and similar documentary evidence, we will assume, without deciding, that the Board was required to address his pattern or practice of persecution argument on the merits after reviewing the evidence. But the Board did discuss the pattern or practice argument on the merits in its alternative holding, so we will analyze that. See infra Part III.B.

A.

Velautham contends that the Board erred by adopting the IJ's adverse credibility finding and was therefore wrong to conclude he did not provide enough evidence to show that he was or would be singled out for persecution.  He argues that a holistic review of the evidence shows that he is credible and that "problem[s] caused by interpreters are real ones."  But substantial evidence supports the Board's adverse credibility conclusion, so we will not overturn it.  See Xia v. U.S. Att'y Gen., 608 F.3d 1233, 1239 (11th Cir. 2010) (affirming adverse credibility finding under substantial evidence standard).

A single material inconsistency can support an adverse credibility finding.  See id. at 1240.  Here, the record contained numerous material discrepancies in Velautham's statements to government officials and in his applications.  The IJ noted many of them, including whether he was physically harmed in Sri Lanka, whether the Army beat people at a protest, and whether his alleged attackers had visible weapons.  While Velautham explained some of his inconsistent statements, the IJ was not required to believe those explanations.  See Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1232–33 (11th Cir. 2006) (refusing to reverse adverse credibility determination despite "tenable" explanation by petitioner).  Especially given the number of inconsistencies and the lack of corroborating evidence "that would have rebutted these inconsistencies and omissions," the IJ offered more than enough

9

"specific, cogent reasons, supported by the record," to support its adverse credibility determination. Xia, 608 F.3d at 1240.[2]

Given his weak, non-credible testimony, Velautham was required to provide strong corroborative evidence to demonstrate that he had been or would be singled out for persecution. See Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005) ("The weaker an applicant's testimony, however, the greater the need for corroborative evidence."). He did not do so. The articles, country reports, and other documents he submitted did not specifically address any of his claims, nor did they corroborate important parts of his testimony, such as the alleged attack he suffered by individuals on a motorcycle. Given the lack of evidence corroborating his non-credible testimony, the Board properly concluded Velautham was not singled out for past persecution and did not have a reasonable fear that he would be singled out for persecution in the future. See Forgue, 401 F.3d at 1287.[3]

---

[2] Velautham cites an unpublished out-of-circuit decision, Shrestha v. Holder, 590 F.3d 1034 (9th Cir. 2010), to argue that the "rule of reason" required the IJ to take a "commonsense" approach to his testimony, and her failure to do so compels us to reject her adverse credibility finding. His argument has no merit. That unpublished case is not controlling to the extent it differs from this Court's substantial-evidence standard, which we apply.

[3] Velautham argues that the IJ erred by not granting a continuance in his case to permit him to obtain letters from his family members to corroborate his testimony. Because he did not seek a continuance from the IJ or otherwise object until after he appealed to the Board, he has forfeited that issue. See Ortiz-Santiago v. Barr, 924 F.3d 956, 964–65 (7th Cir. 2019).

B.

The IJ also ruled that Velautham had failed to show a pattern or practice of persecution targeting a statutorily protected group of which he was a member, and therefore he did not qualify for asylum under a pattern or practice theory of persecution.  The Board agreed.  Velautham argues the Board erred by: (1) not providing a reasoned decision on whether there was a pattern or practice of persecution of Tamil individuals; (2) adopting the legally and factually flawed IJ decision rejecting his argument that there was a pattern and practice of persecution of Tamil individuals; (3) adopting the legally and factually flawed IJ decision rejecting his pattern or practice of persecution claim about returned asylum seekers; and (4) failing to decide his argument that he feared persecution on account of being both a Tamil and a failed asylum seeker.  We address each argument in turn.

1.

First, Velautham argues the Board did not provide a reasoned decision addressing his claim of a pattern or practice of persecution against Tamil individuals.  He is incorrect.

The Board must give reasoned consideration to an applicant's claim and make adequate findings about that claim so we can properly review its conclusion.  See Ali v. U.S. Att'y Gen., 931 F.3d 1327, 1333 (11th Cir. 2019).  In this case the

Board adopted the IJ's reasons denying Velautham's asylum claim, which included the Tamil-based pattern or practice issue. Adopting the IJ's decision and reasoning satisfies the reasoned consideration standard as long as the IJ's decision gives reasoned consideration to the claim. See Tang, 578 F.3d at 1275. Here, no one argues that the IJ failed to do so. So we have a reasoned decision we can and will review: the IJ's. See Perez-Zenteno v. U.S. Att'y Gen., 913 F.3d at 1306 (noting that we review the IJ's decision if the BIA expressly adopts it); Najjar, 257 F.3d at 1303 (denying CAT claim after denying asylum claim).[4]

2.

Second, Velautham argues that the IJ's decision rejecting his argument that ethnic Tamils suffered a pattern or practice of persecution contains legal and factual errors, so the Board erred by adopting it.

He claims the IJ applied the wrong legal standard in its pattern or practice analysis, arguing that an applicant need only show a "reasonable possibility" that a pattern or practice of persecution exists. See INS v. Cardoza, 480 U.S. 421, 440 (1987) (holding that alien can satisfy asylum burden by showing that "persecution is a reasonable possibility"); see also Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226,

---

[4] Velautham also argued that the Board erred by not addressing his pattern or practice argument at all. But the Board did address it by adopting the IJ's decision, which it is allowed to do. See Tang, 578 F.3d at 1275.

1232 (11th Cir. 2005).  And he argues that the IJ instead incorrectly required overwhelming evidence from him.

The IJ did not apply an incorrect legal standard.  The IJ's overall ruling was that Velautham did not "make a prima facie showing of a pattern or practice of persecution of Tamils . . . in Sri Lanka," which is consistent with the "reasonable possibility" standard.  Although the IJ used the phrase "compel the conclusion" regarding the country condition evidence, that statement was in connection with the IJ's discussion of how, absent other evidence, the fact that some Tamil asylum seekers were detained does not show that all Tamils or asylum seekers faced persecution or torture.  The IJ's overall ruling made clear that Velautham's claim failed because he did not provide evidence showing a pattern or practice of persecution, not because his evidence did not compel a conclusion that a pattern or practice of persecution exists.

Velautham also asserts that the IJ's finding that some of his documents showing persecution were outdated and too general to be useful is not supported by substantial evidence.  But the IJ's finding that some of the evidence about Sri Lanka's country conditions was outdated because the publication dates ranged from 2009 to 2016 is not contradicted by the record.  The same is true of the IJ's ruling that the bulk of the current country conditions evidence discussed human rights violations in general or other non-relevant topics.  The IJ's conclusion that

13

Velautham did not show a pattern or practice of persecution against ethnic Tamils was supported by substantial evidence.

3.

Third, Velautham argues that the IJ erred in rejecting his asylum petition because a pattern or practice of persecution of asylum seekers in Sri Lanka does exist (and the Board erred in adopting the IJ's reasoning). He asserts that all he had to show was group persecution, and the IJ wrongly required him to provide direct evidence of individual risk to himself. He argues the IJ erred in concluding that the evidence he submitted had little probative value on this topic. He does not, however, challenge the IJ's decision that "returning asylum seekers" is not a cognizable "social group" under 8 U.S.C. § 1101(a)(42)(A) for purposes of asylum because that group "is overbroad and not socially distinct." And for his claim to succeed, his proposed social group — returned asylum seekers — must have a nexus to a protected status under § 1101(a)(42)(A). Castillo-Arias v. U.S. Att'y Gen., 446 F.3d 1190 (11th Cir. 2006). Because Velautham has not shown, indeed, he has not even argued, that returning asylum seekers is a cognizable social group under § 1101(a)(42)(A), he has not shown that the Board erred in adopting the IJ's finding to that same effect. See Cole, 712 F.3d at 530.

14

4.

Fourth, Velautham argues that the Board erred by not considering his claim of entitlement to asylum for being both ethnically Tamil and a failed asylum seeker.  But we do not have jurisdiction over claims that he did not exhaust before the Board.  See Indrawati v. U.S. Att'y Gen., 779 F.3d 1284, 1297 (11th Cir. 2015).  To exhaust a claim, a petitioner must have argued "the core issue now on appeal" before the Board.  Id. (quotation marks omitted).  He did not raise this argument before the Board, so we lack jurisdiction to consider it.  See Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006) (concluding that "we lack jurisdiction" to consider an argument not raised by petition to the Board).

C.

Because the Board did not err in holding that Velautham failed to establish either past persecution or a well-founded fear of future persecution, it correctly denied his asylum claim, Sama 887 F.3d at 1233–34, and his withholding of removal claims under the INA and CAT.  Forgue, 401 F.3d at 1288 n.4; D-Muhumed, 388 F.3d at 819.

**PETITION DISMISSED in part and DENIED in part.**